UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAYED HAFIZULLAH SADAT,<br>Petitioner,<br>v.<br>BRUCE SCOTT et al.,<br>Respondent. | CASE NO. 2:26-cv-02918-DGE<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 5) |

This matter comes before the Court on Petitioner Sayed Hafizullah Sadat's petition for writ of habeas corpus. (Dkt. No. 5.) Having reviewed the petition, the return memorandum (Dkt. No. 8), the traverse (Dkt. No. 11), and all supporting materials, the Court GRANTS the petition and ORDERS Respondents to provide an individualized bond hearing.

## I BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Afghanistan. (Dkt. No. 5 at 2.) Petitioner entered the United States from Mexico on January 21, 2025, near Lukeville, Arizona "without the necessary

legal documents to enter, pass through, or remain in the United States." (Dkt. No.10-1 at 3–4.) That same day, Petitioner was apprehended by a Border Patrol Agent, arrested and transported to the Casa Grande Border Patrol Station, where he admitted to entering the United States without being inspected by an immigration officer. (*Id*. at 3–4.) He was then placed in expedited removal proceedings and ordered removed. (Dkt. No. 10-2.)

Petitioner was transferred to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma on February 2, 2025, pending removal. (Dkt. No. 8 at 5.) On March 10, 2025, Petition expressed fear of return to Afghanistan and was referred for a credible fear interview with United States Citizenship and Immigration Services ("USCIS"). (*Id*.) USCIS determined that Petitioner had a credible fear of return. On June 17, 2025, Petitioner was placed into removal proceedings through the issuance of a Notice to Appear ("NTA") (Dkt. Nos. 9 at 2; 10-3) and scheduled for an initial removal hearing on July 1, 2025 (Dkt. No. 10-3 at 1).

On September 25, 2025, Petitioner applied for asylum and withholding of removal. (Dkt. No. 5 at 3.) Petitioner's merits hearing was held on November 5, 2025. (Dkt. Nos. 5 at 3; 8 at 5; 10-4.) After presentment, the immigration judge denied all applications for relief and ordered Petitioner removed to Afghanistan. (Dkt. No. 10-4.) On November 6, 2025, Petitioner appeared again for a bond redetermination hearing, where the immigration judge denied his motion finding no jurisdiction. (Dkt. No. 9 at 3.) Petitioner timely appealed the immigration judge's initial decision ordering his removal to the Board of Immigration Appeals ("BIA") on December 3, 2025. (Dkt. No. 8 at 5.) As of September 1, 2026, that appeal is still pending. (Dkt. 9 at 3.)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on August 18, 2026, asserting his prolonged detention without a bond hearing violates due process. (Dkt. No. 5 at 12.)

Respondents respond that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b) (Dkt. No. 8 at 6–7) and that he is not entitled to a bond hearing under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) (*id*. at 9). Petitioner filed a traverse arguing that he is in fact detained under 8 U.S.C. § 1226(a) and reasserting his argument that he is entitled to a bond hearing under *Banda*. (Dkt. No. 11.)

## II LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III ANALYSIS

### A. Petitioner is entitled to a bond hearing under *Banda.*

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth

Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Petitioner and Respondent disagree as to which authority governs Petitioner's detention. The Ninth Circuit recently held that 8 U.S.C. § 1225(b)(2)(A) is "best construed as applying to aliens entering the United States at the border, while § 1226 is "best understood as governing inadmissible and deportable aliens present in the *interior* of the Untied States." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). Individuals entering without inspection are considered "applicants for admission" if they are "encountered within 14 days of entry and within 100 miles of the physical border." *Dept. of Homeland Security, et al. v. Thuraissigiam,* 591 U.S. 103, 109 n.2 (citing 69 Fed. Reg. 48879 (2004)). Petitioner was apprehended near Lukeville, Arizona, a town on the Mexico-United States border, on the date of his entry. (*See* Dkt. No. 10-1.) This Court therefore finds that Petitioner was "entering the United States at the border," is currently detained under 8 U.S.C. § 1225(b), and therefore has no statutory right to a bond hearing, as he would under 8 U.S.C. § 1226(a).

While Petitioner's detention is statutorily mandated under 8 U.S.C. § 1225(b), his continued detention must still comport with due process. In *Jennings*, the Supreme Court held that § 1225(b)—under which Petitioner is detained—"unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1115 (W.D. Wash. 2019) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297, 303 (2018)). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our

democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. However, "'[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Maliwat v. Scott*, No. C25-00788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the *Banda* court declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–1107. Rather, the court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–859 (D. Minn. 2019)). Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *6 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL

3170929 (W.D. Wash. Nov. 13, 2025); *Hong v. Mayorkas*, No. 20-cv-01784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). The Court will likewise apply the *Banda* test to determine whether Petitioner's continued detention without a bond hearing violates due process.

The first and "most important factor" under the *Banda* test is the length of detention. 385 F. Supp. 3d at 1118. At the time of this order, Petitioner has been detained for nineteen and one-half months. Thus, his civil detention has reached the length of what many courts in this district have found to be unreasonable. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1118–1119 (finding that petitioner's length of detention "strongly favors" a bond hearing because "Petitioner has been in detention for approximately 17 months, which is a very long time."); *Cardozo v. Bostock*, No. C25-00871-TMC, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding petitioner's 12-to-13-month detention favored granting a bond hearing); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) ("almost 12 months"); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, No. C23-1592-RSL-MLP, 2024 WL 1676681 (Apr. 18, 2024) (11 months). The first and most important *Banda* factor weighs in favor of granting a bond hearing.

The second *Banda* factor also weighs in favor of granting a bond hearing. 385 F. Supp. 3d at 1118. Where "an appeal ha[s] already been filed," "courts [have] found that the length of appeal favor[s] the petitioner[.]" *Maliwat*, 2025 WL 2256711, *5 (collecting cases). Here, Petitioner has filed an appeal with the BIA, which remains pending. It is unclear when the administrative appeal will be decided or how long it could take to complete any subsequent

judicial review. It, therefore, is not unreasonable to conclude the administrative appeal and judicial process could take years and that future detention would continue for quite some time. Thus, the second *Banda* factor weighs in favor of granting a bond hearing.

As for the third *Banda* factor—conditions of detention—Petitioner raises serious questions about his confinement. Petitioner identifies his conditions are similar to penal confinement. He asserts that he spends most of his time locked in a unit with about 120 other detainees, sharing a bunk, where it is very loud and the lights remain on at all times. (Dkt. Nos. 5 at 10, 5-2 at 2.) He asserts that he is only allowed to go outside once a day for forty minutes, three to four times a week, and this outdoor time is often cancelled. (*Id*.) Petitioner also claims that the food is of such poor quality that he often doesn't eat, he is unable to obtain books to read in his language, the practice of religion is constrained, and he is not receiving adequate medical care. (*Id*.) In response, Respondents only state that "Petitioner does not articulate any inadequacies other than being confined." (Dkt. No. 8 at 8.) Based on the similarities between the operation of a jail or prison facility and the operation of the NWIPC, the Court finds the third *Banda* factor weighs in favor of granting a bond hearing.

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the petitioner. 385 F. Supp. 3d at 1118. Respondents cede that "there is no evidence that Petitioner has intentionally caused any delay." (Dkt. No. 8 at 8.) Accordingly, the Court finds Petitioner's delay weighs in favor of Petitioner.

Under the fifth *Banda* factor, the Court considers delays in the removal proceedings caused by the respondents. 385 F. Supp. 3d at 1118. Petitioner asserts that he had to wait for two months for his credible fear appointment (Dkt. No. 5 at 12) and that "the Immigration Judge had not scheduled sufficient time to complete [his] Individual Calendar hearing and had to

continue the hearing to a date […] months later. (Dkt. No. 11 at 11.) The Respondents contend that "the government has not intentionally caused any delay." (Dkt. No. 8 at 8). The Court finds this factor weighs slightly in favor of Petitioner.

Under the final *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. 385 F. Supp. 3d at 1118. Because the outcome of Petitioner's asylum application is unknown, it would be speculative to evaluate this factor. Thus, the sixth *Banda* factor is neutral.

Having considered and weighed the *Banda* factors, the Court concludes Petitioner's prolonged detention violates due process.

**B. Petitioner has stated the correct bond hearing burden of proof.**

Petitioner requests a hearing in which "the government must establish by clear and convincing evidence that [he presents] a flight risk or danger and that no alternative to detention can mitigate any risk that [his] release would present." (*See* Dkt. No. 5 at 14.) Respondents argue only that they are not obligated to provide Petitioner a bond hearing but do not discuss the appropriate standard for a bond hearing in the event one is ordered. (*See* Dkt. No. 8.)

The Court agrees with Petitioner's requested standard of proof for this bond hearing. The Ninth Circuit previously considered the burden of proof in bond hearings where it mistakenly found the existence of an implied statutory right to a bond hearing. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281. In doing so, the Ninth Circuit "relied on the Due Process Clause in determining the procedural rights due to alien detainees . . . in service of an implied statutory right to a bond hearing for persons detained under § 1226(c)—an implied right that the Supreme Court has now rejected." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). *Singh*'s conclusion that the

government must prove by clear and convincing evidence that a noncitizen is a flight risk or danger to the community to justify continued detention was "based . . . on general principles of procedural due process [after] reasoning that a detained person's liberty interest is substantial." *Id*. at 1199. Thus, although *Singh* relied on a nonexistent statutory right to a bond hearing in announcing the procedural rights required under the Due Process Clause for conducting a bond hearing, the Court finds no reason to conclude that the Due Process Clause allows for less procedural rights when the Due Process Clause itself, rather than a statute, requires a bond hearing. Other courts in this district have reached similar conclusions. *See, e.g.*, *Dovlatov v. Hernandez*, No. 2:26-cv-00826-JNW, 2026 WL 1030454, *3 (W.D. Wash. Apr. 16, 2026); *Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, *6 (W.D. Wash. March 6, 2026); *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, *6 (W.D. Wash. Dec. 5, 2025).

## IV ORDER

Accordingly, for the reasons articulated herein, the Court finds and ORDERS that Petitioner's petition for writ of habeas corpus (Dkt. No. 5) is GRANTED.

1. Petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.
2. Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing (unless Petitioner requests a continuance to prepare for the bond hearing). At the bond hearing, Respondents carry the burden of proving by clear and convincing evidence that Petitioner presents a flight risk or a danger to the community to justify his continued detention. In the event that a bond is granted, Respondent is

ORDERED to release Petitioner within twenty-four (24) hours of the hearing subject to reasonable conditions of supervised release.

3. If the individualized bond hearing is not conducted within fourteen days of this order (unless Petitioner requests a continuance), Petitioner MUST be released no later than the fifteenth day after this hearing under appropriate conditions of supervised release.

4. Petitioner SHALL not be transferred from this District while he awaits his bond hearing.

5. Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial. The Clerk is directed to calendar this event.

Dated this 16th day of September, 2026.

David G. Estudillo
United States District Judge